# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| KENTREZ GRANT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:25-cv-00154-ADA |
| | § | |
| DELTA AIR LINES, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT'S THIRD MOTION TO DISMISS

Celeste R. Yeager
Texas State Bar No. 00797715
cyeager@littler.com
Josh K. Ordiway
Texas State Bar No. 24126538
jordiway@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
Telephone:    214.880.8100
Facsimile:    214.880.0181

**ATTORNEYS FOR DEFENDANT
DELTA AIR LINES, INC.**

# TABLE OF CONTENTS

I. PROCEDURAL HISTORY ................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

III. ARGUMENTS & AUTHORITIES ................................................................................. 3

    A.    Legal Standard Under Rule 12(b)(6) .................................................................. 3

    B.    Grant fails to state a claim for race-based disparate treatment because he
          fails to allege Delta took adverse employment actions against him based
          on his race. ......................................................................................................... 4

          1.    The only adverse employment actions Grant experienced were his
                 suspension and termination. .......................................................................... 5

          2.    Grant fails to connect his race to his suspension or termination ............... 6

    C.    Grant fails to state a claim for national-origin discrimination because he
          fails to allege Delta took adverse employment actions against him based
          on his national origin. ......................................................................................... 8

    D.    Grant fails to state a claim for disability discrimination because he does
          not allege he was disabled within the meaning of the ADA. ............................... 8

    E.    Even if Grant alleged he was disabled within the meaning of the ADA, he
          still fails to allege the necessary elements of disability discrimination. ............. 11

          1.    Grant fails to state a claim for disparate treatment under the ADA
                 because he fails to allege he was subject to an adverse employment
                 action based on his disability status. ............................................................. 11

          2.    Grant fails to state a claim for failure to accommodate because his
                 threadbare allegations lack necessary detail. ............................................. 13

    F.    Grant fails to allege Delta unlawfully retaliated against him because he
          does not connect any adverse employment action to allegedly protected
          activity ............................................................................................................... 15

    G.    Grant fails to state a claim for race- or disability-based hostile work
          environment because he does not allege severe or pervasive conduct. ............... 16

    H.    The Court should dismiss all of Grant's claims with prejudice. .......................... 20

IV. CONCLUSION ............................................................................................................. 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **KENTREZ GRANT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 1:25-cv-00154-ADA** |
| | § | |
| **DELTA AIR LINES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## <u>DEFENDANT'S THIRD MOTION TO DISMISS</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Delta Air Lines, Inc. files this Third Motion to Dismiss, respectfully requesting the Court dismiss Plaintiff Kentrez Grant's Second Amended Complaint (ECF No. 35-2) with prejudice.

## I. PROCEDURAL HISTORY

Delta will attempt to summarize the convoluted procedural history of this case. Grant filed his original "Complaint" on January 31, 2025. *See* ECF No. 1. After Delta filed its first Motion to Dismiss under Rule 12(b)(6) on February 24, 2025, Grant sought leave to file and withdraw three amended complaints. *See* ECF Nos. 5, 7, 8, 9, 10. On March 6, 2025, Grant filed a pleading named "Unopposed Amended Complaint," which Delta assumed was the operative complaint. Delta then filed a Partial Motion to Dismiss on March 20, 2025, seeking dismissal of several claims within that complaint. *See* ECF Nos. 10-2, 12.

On March 27, 2025, Grant filed a "Fourth Amended Complaint." *See* ECF No. 14. On March 31, 2025, the Court docketed the Unopposed Amended Complaint as the operative complaint. *See* ECF Nos. 20, 30. On April 9, 2025, Delta filed a Motion to Strike the Fourth Amended Complaint and another pleading Delta believed was Grant's fifth amended complaint.

*See* ECF No. 22. The next day, Grant filed his Fifth Amended Complaint. *See* ECF No. 26.

On April 21, 2025, the Court granted Delta's Motion to Strike as to the Fourth Amended Complaint but not to the pleading Delta believed was Grant's fifth amended complaint. *See* ECF No. 30. The Court also *sua sponte* struck Grant's Fifth Amended Complaint (leaving the Unopposed Amended Complaint as the remaining operative complaint). *See id*. at 4. The same day, the Court denied Delta's Partial Motion to Dismiss to the extent the motion sought dismissal *with prejudice*. *See* ECF No. 28 at 11. The Court's Order substantively adopted Delta's arguments and allowed Grant "one final opportunity to replead with specificity the claims discussed" in the Order. *Id*. The Court thus ordered Grant to file one more amended complaint within fourteen days, which would supersede the operative complaint. *Id*. Grant filed his "Second Amended Complaint" (hereinafter "SAC") on May 6, 2025. *See* ECF No. 35-2.

## II. FACTUAL BACKGROUND

Accepting the facts of the SAC as true, Grant is an African-American man with various medical ailments who worked as a Ramp Agent for Delta from June 17, 2024, until his termination on September 27, 2024. *Id*. at ¶¶ 5.1, 5.2, 7.4, 7.5.

Grant's SAC alleges a handful of negative workplace experiences. He claims employees bullied and harassed him after he allegedly reported he was assaulted and that he "wrongfully failed" certain training. *Id*. at ¶¶ 5.2, 5.3. He also alleges a coworker named Jose Linares said he felt unsafe because Grant was on medication and falsely asserted that Grant would "hurt people and destroy equipment if he doesn't get his medication." *Id*. at ¶ 5.5. A supervisor was allegedly concerned with the false allegation, despite calling Grant a "stellar" employee. *Id*. According to Grant, he was asked if he was "haze[d]" in the military and faced "toxic" and "abusive" behavior by employees, one of whom allegedly told him "he does not answer stupid a** questions." *Id*. at

¶¶ 5.5, 5.6, 5.12. Another employee allegedly referred to him as a "bag." *Id*. at ¶ 7.15. Grant further claims an employee escorted him to a handicap parking lot to embarrass him. *Id*. at ¶ 5.12. He also seems to question his officially designated supervisor and shift. *Id*. at ¶ 5.9.

Grant further alleges that he complained about his work experience. He alleges that he filed a "Complaint" with the EEOC during his employment, of which his leadership was allegedly aware, and a Charge of Discrimination with the EEOC after his termination. *Id*. at ¶¶ 1.2, 3.1, 5.4, 5.5, 6.2. Grant also claims he notified two employees of his disabilities and of certain conflicts with a "bid" system Delta apparently used. *Id*. at ¶ 5.4. He also claims that he complained of personnel not completing certain disability training. *Id*. at ¶¶ 5.8, 5.9. Further, he alleges he informed his supervisor of "harassment from employees" and emailed a handful of Directors and C-Suite officers about "discriminatory and harassment issues" at Delta. *Id*. at ¶¶ 5.4, 5.13.

Grant also claims that he sought unspecified accommodations. He alleges he "requested accommodations via the method emailed by Ms. Brown" on August 10, 2024, and that the request was denied the next day. *Id*. at ¶¶ 5.8, 5.9. He claims that Delta denied another request the day after that despite Grant allegedly explaining "the process of getting a provider to sign off on documents." *Id*. at ¶ 5.10. Additionally, he claims that he accepted a bid that would allow him to attend medical appointments. *See id*. at ¶ 5.11.

Finally, Grant states that Delta placed him on unpaid suspension on August 16, 2024, and terminated his employment on September 27, 2024. *Id*. at ¶¶ 5.12, 5.14, 7.15.

### III.  ARGUMENTS & AUTHORITIES

#### A.    Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not plausible when it is based on nothing more than a "formulaic recitation of the elements of a cause of action" or consists merely of "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 555). While a Court must accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.    Grant fails to state a claim for race-based disparate treatment because he fails to allege Delta took adverse employment actions against him based on his race.

Grant's SAC fails to plausibly allege that he suffered disparate treatment based on his race. Grant need not establish a *prima facie* case of discrimination at the pleading stage, but he still must plead sufficient facts on all the "ultimate elements" of his disparate-treatment claim to survive a motion to dismiss. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). These elements are: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* [his] protected status.'" *Cicalese v. Univ. of Tex. Medical Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (emphasis in original) (citations omitted). But because a plaintiff relying on circumstantial evidence will "ultimately have to show" he can satisfy the familiar *McDonnell Douglas* burden-shifting framework, it is "helpful to reference" the *McDonnell Douglas prima facie* elements to determine whether a plaintiff sufficiently pleads the ultimate elements. *See id*. "To establish a *prima facie* claim for race discrimination under Title VII, a plaintiff must show 'that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021).

     1.    <u>The only adverse employment actions Grant experienced were his suspension and termination.</u>

To satisfy the "adverse employment action" requirement, a plaintiff must allege facts plausibly showing "discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dallas Cnty.*, 79 F. 4th 494, 502–03 (5th Cir. 2023) (en banc) (citing 42 U.S.C. § 2000e-2(a)(1)). While Grant complains of various conduct during his employment, only his suspension and termination are adverse employment actions.

Grant's confusing assertions about working the day shift versus the night shift do not plausibly allege adverse employment actions. He claims a supervisor wanted "to try to force the plaintiff to be on nights" but contradictorily also claims he worked the day shift and was merely "administratively placed" on the night shift. *See* ECF No. 35-2 at ¶¶ 1.3, 5.9. Indeed, he later claims he "never worked nights" and it was instead an employee named Josue Roman who was "forced to work nights" (and who successfully advocated for Grant to work the day shift). *Id*. at ¶¶ 1.3, 7.20. In any event, Grant fails to allege which shift was more desirable than the other. He thus fails to explain how moving between the shifts could have affected the terms, conditions, or privileges of his employment. In the same vein, while Grant appears to assert that he received fewer breaks than other employes, he also alleges just the opposite, claiming that schedulers deliberately put him "only on lunch" so that he would appear lazy. *Id*. at ¶¶ 7.12, 7.13.

Grant's allegations regarding the seniority list also do not allege adverse employment actions. He claims a non-Black employee replaced him in the seniority list following his termination, but he fails to explain how this affected the terms, conditions, or privileges of his employment. Logically, once Grant was terminated, Delta's seniority list no longer affected him.

Grant also cannot establish an adverse employment action based on failing certain training. Grant claims he was "wrongfully failed" for belt loader operations training based on a "false

allegation" of driving a vehicle with the emergency break engaged. *Id*. at ¶ 5.3. Even if Grant's failing score resulted exclusively from this false allegation, he does not explain how failing the training inhibited his employment in any way. Instead, Grant alleges that he "showed up to work early every day" and "[p]erformed all task[s] to or above the standard." *Id*. at ¶ 7.12.

Therefore, the only adverse employment actions Grant experienced during his employment were his suspension and termination. Accordingly, Grant must show that Delta suspended or terminated him because of his race.

2.    Grant fails to connect his race to his suspension or termination.

Grant fails to plausibly allege he was suspended or terminated based on his race. In fact, Grant claims that the reason for his termination was an "unsubstantiated allegation" (presumably the one from Linares about feeling unsafe due to Grant's medication), not his race. *Id.* at ¶ 7.13. Grant emphasizes the allegedly false accusation throughout his SAC, even complaining that it garnered more attention than other employees' alleged transgressions. *Id*. at ¶ 5.5. While Grant notes that non-Black employees did not suffer "defamation and slander causing employment termination," he wholly fails to allege that Delta defamed or slandered him *because of* his race. *Id*. at ¶ 7.12. Simply put, Grant fails to allege any discriminatory motive related to his suspension or termination.

a.    *Grant does not allege he was replaced by a non-Black employee.*

Grant also fails to allege he was replaced by someone outside his protected class, alleging no facts that his position as a Ramp Agent was filled by a non-Black employee after his suspension or termination. Grant's allegations of replacement extend only to his position on the seniority list. As discussed above, Grant's replacement on the seniority list after he was no longer working at Delta is not an adverse employment action and thus cannot give rise to a claim for discrimination. In any event, Grant does not plausibly allege he was replaced on the seniority list *because of* his race.

Rather, Grant's allegations indicate that because he was terminated, the next senior employee replaced him. Grant himself admits that "[t]he seniority list is based on date of employment and then age." *See id*. at ¶ 1.3. In short, Grant pleads no facts suggesting that the seniority list operated based on anything other than seniority.

> b. *Grant does not allege he was treated less favorably than similarly situated, non-Black employees.*

Grant also fails to allege he was treated less favorably than similarly situated, non-Black employees. Courts require that an employee alleging employment discrimination "who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under *nearly identical circumstances*." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 484 (5th Cir. 2023) (emphasis added). The "nearly identical circumstances" standard is a stringent one; employees with different responsibilities, different supervisors, different capabilities, or different disciplinary records are not considered to be "nearly identical" under the law. *See Okoye v. Univ. of Tex. Hous. Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (citations omitted).

While Grant identifies fellow Ramp Agents in his SAC, he fails to allege they were treated more favorably than him. He notes that he received belt loader operations training along with three non-Black Ramp Agents: Stephanie Truong, Melvin McLemore, and Kinereta Falaniko. *See* ECF No. 30-2 at ¶ 5.3. Even if the training were an adverse employment action, Grant does not allege that these Ramp Agents received more favorable treatment. His only specific allegation is that Troung ran over traffic cones during the training. And, while Grant claims he unfairly failed the training, he does not allege the other three Ramp Agents passed the training. He thus fails to allege Delta treated the non-Black employees more favorably. Grant also mentions another Ramp Agent, Joseph Serrano, but concedes that he and Serrano received the "same opportunity." *Id*. at ¶ 7.15.

Grant's allegations that non-Black employees arrived to work late or missed shifts is

irrelevant, as Grant does not allege he was unfairly punished for being late. *See id.* at ¶ 5.7. Further, Grant's allegation that "defamation and slander used in reference to prescribed medication would not have been a tool for termination but for the fact Mr. Grant is African American" fails to identify any non-Black, slander-suffering employees. *See id.* at ¶ 1.3. Accordingly, Grant fails to allege he was treated less favorably than similarly situated, non-Black employees.

**C.   Grant fails to state a claim for national-origin discrimination because he fails to allege Delta took adverse employment actions against him based on his national origin.**

Grant's SAC also hints at a national-origin discrimination claim. If Grant is claiming disparate treatment based on his national origin, he must plausibly allege: (1) an adverse employment action, (2) taken against him *because of* his national origin (although it is "helpful to reference" the *prima facie* elements as well). *See Cicalese*, 924 F.3d at 767. If Grant is claiming harassment based on national origin, he must allege severe or pervasive conduct.

Grant claims that "[d]iscrimination by origin could also be a factor" because Grant is "African American and Christopher Joseph stated he was from the Caribbean." ECF No. 35-2 at ¶ 1.3. Grant also notes that a fellow ramp agent named Peter Mendy was "Black from another country." *Id.* at ¶ 5.3. Neither of these statements plausibly alleges an adverse employment action—let alone one taken against Grant because of his national origin. Grant also fails to allege that Mendy or Joseph were similarly situated to Grant and received more favorable treatment. Grant merely suggests that two coworkers happened to be Black but not African American. Indeed, Grant does not connect *any* negative treatment to his national origin. Grant thus fails to state a claim for discrimination or harassment based on his national origin.

**D.   Grant fails to state a claim for disability discrimination because he does not allege he was disabled within the meaning of the ADA.**

Next, Grant alleges that Delta unlawfully discriminated against him based on an alleged

disability. However, each of Grant's disability-discrimination claims fails for a fundamental reason: He fails to allege he was disabled within the meaning of the ADA.

Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities [of such individual]; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Milton v. Tex. Dep't of Criminal Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (brackets in original) (citing 42 U.S.C. § 12102(1)). "'Merely having an impairment' is not enough to qualify as disabled under the ADA—a plaintiff 'also need[s] to demonstrate that the impairment substantially limits a major life activity.'" *Mueck*, 75 F.4th at 479 (citations omitted).

Grant alleges that he suffered from PTSD, MDD, anxiety, skeletal ailments, and "other ailments."[1] ECF No. 35-2 at ¶¶ 5.1, 5.2, 7.4, 7.5, 5.8, 5.9. He also claims he was falsely accused of making threats if he did not get his medication. *Id.* at ¶ 5.5. These allegations do not reveal an impairment that substantially limited one of Grant's major life activities. By merely referencing that he was "disabled" and listing various medical conditions, without additional detail, Grant's allegations fall far short of federal pleading standard. *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 297 (5th Cir. 2012) (plaintiff failed to adequately plead she was disabled within the meaning of the ADA where she merely recited that her alcoholism impaired a major life activity without specifying which life activity); *Smith v. McDonough*, No. SA-22-CV-01383-JKP, 2023 WL 5918322, at *7 (W.D. Tex. Sept. 8, 2023) (plaintiff alleging he suffered from a "degenerative

---

[1] In support, Grant attaches what appears to be an Army memo from October 2018 stating that he manifested an anxiety disorder or PTSD at the time. *See* ECF No. 35-7 at 2. This document is not properly before the Court. *See Equal Emp. Opportunity Comm'n v. Plains Pipeline, L.P.*, No. MO:20-CV-00082-DC, 2021 WL 2786552, at *3 (W.D. Tex. Feb. 17, 2021) ("[T]he court does not look beyond the face of the complaint to determine whether the plaintiff states a claim under Rule 12(b)(6)." (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999))). Even if the Court could consider the memo, it does not reveal how Grant's conditions substantially impaired a major life activity nor whether Grant had these conditions during his employment with Delta in 2024. And the memo offers no support whatsoever to Grant's allegation that he suffered from MDD or skeletal ailments.

bone disorder" but not how it affected his daily life activities, ability to work, or need for an accommodation failed to state a claim under Rehabilitation Act[2]); *see also Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (PTSD, standing alone, is "not necessarily a disability contemplated by the ADA").

Grant also alleges that Delta discriminated against him based on a *perceived* disability. *See* ECF No. 35-2 at ¶¶ 7.2–7.5. Grant thus seems to alternatively allege he was "regarded as" having a qualifying impairment by Delta. *See* 42 U.S.C. § 12102(1)(C). A plaintiff meets the requirement of "being regarded as having such an impairment" if he establishes that he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *See id*. § 12102(3)(A). Crucially, "[e]stablishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability. Liability is established under title I of the ADA only when an individual proves that a covered entity discriminated on the basis of disability within the meaning of [the ADA]." 29 CFR § 1630.2(l)(3); *compare Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (where plaintiff showed that employer was aware of his medical condition but not that it discriminated against him on that basis, plaintiff was not "regarded as" disabled), *with E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 700–01 (5th Cir. 2014) (where employer told employee it would be "in trouble" if employee's "disability manifested again" on the job and would terminate her employment because she was "a liability to [the] company," plaintiff was "regarded as" disabled).

Here, Grant has not alleged facts suggesting that Delta regarded him as having a physical

---

[2] The Rehabilitation Act ("RA") and the ADA "are judged under the same legal standards . . . Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA." *Smith v. McDonough*, 2023 WL 5918322, at *7 (quoting *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010)).

or mental impairment. While he alleges that Linares falsely claimed that Grant would "hurt people and destroy equipment if he doesn't get his medication," this allegation does not reveal that Delta perceived Grant as having a physical or mental impairment. *See* ECF No. 35-2 at ¶ 5.5. Rather, it reveals that a particular employee—whom Grant does not allege was his supervisor—created a rumor about *actions* Grant would take if he did not have certain medications. As for Joseph's escorting of Grant to a handicap parking lot, Grant concedes that this conduct could have been simply to "embarrass" him, not because Joseph perceived Grant as disabled. *See id.* at ¶ 5.12. In any event, escorting Grant to a parking lot is neither an adverse employment action nor severe or pervasive conduct. Accordingly, Grant has not plausibly alleged that Delta regarded him as having a physical or mental impairment. *See Polak v. Sterilite Corp.*, No. 21-10549, 2022 WL 457822, at *1 n.2 (5th Cir. Feb. 15, 2022) (rejecting "regarded as" claim where plaintiff provided no evidence that employer regarded him as having a physical or mental impairment).

Because Grant does not allege that he was a qualified individual with a disability, it is not plausible that he was discriminated against based on such disability status. Without having pled a disability, Grant fails to state a claim for disparate-treatment disability discrimination, failure-to-accommodate disability discrimination, or disability-based harassment. For this reason alone, the Court should dismiss Grant's disability discrimination claims.

**E.    Even if Grant alleged he was disabled within the meaning of the ADA, he still fails to allege the necessary elements of disability discrimination.**

    1.    <u>Grant fails to state a claim for disparate treatment under the ADA because he fails to allege he was subject to an adverse employment action based on his disability status.</u>

Even if Grant managed to allege he was disabled within the meaning of the ADA, his claims should still be dismissed. To allege a *prima facie* case of disparate-treatment disability discrimination, a plaintiff must demonstrate: (1) he has a disability; (2) he was qualified for the

job; and (3) he was subject to an adverse employment action on account of his disability. *Mueck*, 75 F.4th at 483. Under the ADA, discrimination "must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Braun v. Manpower Grp. US Inc.*, No. 1:19-CV-1122-DAE, 2022 WL 22871460, at \*5 (W.D. Tex. Feb. 16, 2022) (quoting *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008)).

Grant fails to plausibly allege that Delta either suspended him or terminated his employment on account of his actual or perceived disability. The SAC simply alleges that Grant notified Brandon Cummings and Janet Montiy of his disabilities and that Joseph placed him on unpaid suspension and terminated his employment. *See* ECF No 35-2 at ¶¶ 5.4, 5.12, 5.14. Grant provides no evidence allowing a factfinder to conclude that Delta took these actions based on Grant's actual or perceived disability. In fact, Grant ties the alleged accusation about his mediation not to his actual or perceived disability, but rather to his race. *See id*. at ¶ 1.4 ("The defamation and slander used in reference to prescribed medication would not have been a tool for termination but for the fact Mr. Grant is African American."). Accordingly, Grant cannot allege a *prima facie* case of disparate-treatment disability discrimination. *See Teague v. Williamson Cnty.*, No. 1:18-CV-1098-RP, 2020 WL 2542869, at \*10 (W.D. Tex. May 19, 2020) (because plaintiff failed to sufficiently allege facts showing that employer declined to hire her because of an actual or perceived disability, she failed to plausibly plead a disability discrimination claim). In any event, because Grant "has not pleaded facts to show that [he] was disabled, [he] likewise cannot show that [Delta] terminated [his] employment because of a disability." *See Smith v. Gen. Motors LLC,* No. 4:23-CV-00379-O-BP, 2024 WL 3541591, at \*6 (N.D. Tex. July 3, 2024), *report and recommendation adopted*, No. 4:23-CV-00379-O-BP, 2024 WL 3543754 (N.D. Tex. July 25, 2024).

2.     Grant fails to state a claim for failure to accommodate because his threadbare allegations lack necessary detail.

To allege a *prima facie* case of failure-to-accommodate disability discrimination, a plaintiff must allege that: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (citations omitted). "For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge *of any limitations experienced by the employee* as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (emphasis added). In other words, "[k]nowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation." *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 238 (5th Cir. 2017) (citations omitted).

While special words like "reasonable accommodation" need not be uttered, "the employee 'must explain that the [proposed] adjustment in working conditions . . . is for a medical condition-related reason.'" *Mueck*, 75 F.4th at 486 (alteration in original) (citations omitted). "[O]nce the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that together they can determine what reasonable accommodations might be available." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 622 (5th Cir. 2009) (emphasis removed) (citations omitted). Notably, Grant's failure-to-accommodate claim is incompatible with his "regarded as" disparate-treatment claim, so the Court must dismiss at least one of these claims. *See Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 775 (5th Cir. 2020) ("An

employer is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong." (citations omitted)).

Grant claims that he made Delta aware of unidentified disabilities and requested unspecified accommodations, including "via the method emailed by Ms. Brown" on August 10, 2024, which Delta allegedly "denie[d]" the next day. ECF No. 35-2 at ¶¶ 5.4, 5.8, 5.9, 7.7, 7.9. Delta then allegedly denied "another request" the day after that despite Grant explaining "the process of getting a provider to sign off on documents." *Id.* at ¶ 5.10. Grant also recites, without factual support, that reasonable accommodations existed and that Delta failed to engage in the interactive process. *See id.* at ¶ 7.7, 7.8. But contradictorily, he concedes he could schedule his job duties around his alleged disability, stating he accepted a bid that would allow him to attend medical appointments. *See id.* at ¶ 5.11.

These offhand, conclusory allegations about unknown accommodation requests and corresponding denials wholly fail to allege the *kind* of accommodation Grant requested, to whom he made it, or who denied it. Further, these allegations fail to reveal whether Grant's accommodation requests were reasonable or how they would permit him to perform the essential functions of his position. Simply put, Grant's cursory claim that Delta "failed to provide a reasonable accommodation" is a textbook "naked assertion[] devoid of further factual enhancement" preventing the court from drawing the reasonable inference that Delta denied a proposed accommodation.[3] *See id.* at ¶ 7.9; *see Iqbal*, 556 U.S. at 678.

Courts routinely dismiss failure-to-accommodate claims even when plaintiffs (including those proceeding *pro se*) allege more factual detail than Grant has here. *See, e.g.*, *Watson v. FedEx*

---

[3] Grant's Response to Delta's Partial Motion to Dismiss contained an email—which Grant asks this Court to recognize as part of his SAC—that only confirms he failed to complete his accommodation request in Delta's online system. *See* ECF No. 19-9 at 2. In any event, this document is not properly before the Court. *See Plains Pipeline*, 2021 WL 2786552, at *3.

*Express*, No. 23-10806, 2024 WL 340817, at *3 (5th Cir. Jan. 30, 2024) (*pro se* plaintiff's failure-to-accommodate allegations were "wholly conclusory and devoid of the factual allegations necessary to withstand a motion to dismiss" where plaintiff alleged that employer knew of his anxiety, stress, depression, and insomnia), *cert. denied*, 145 S. Ct. 299 (2024); *Doe v. Bonath*, 705 F. Supp. 3d 690, 708 (W.D. Tex. 2023) (*pro se* student's allegations that she registered her bipolar diagnosis with school officers and "confided with some faculty" regarding her diagnosis were insufficient to make out a plausible failure-to-accommodate claim); *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 304 (5th Cir. 2023) (dismissing failure-to-accommodate claim where plaintiff alleged that defendant knew of her mental health issues but failed to allege "that she identified her disabilities or resulting limitations" or that "she requested any of her accommodations 'in direct and specific terms'" (quoting *Smith v. Harris Cnty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020))).

In short, by failing to plausibly allege a disability, its known limitations, or the details of how Delta allegedly failed to accommodate it, Grant fails to state a claim for failure-to-accommodate discrimination. *See Amedee*, 953 F.3d at 837.

### F. Grant fails to allege Delta unlawfully retaliated against him because he does not connect any adverse employment action to allegedly protected activity.

Lastly, Grant alleges that Delta retaliated against him based on his race and alleged disabilities. "To establish a *prima facie* case of retaliation under the ADA or Title VII, a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). To establish the third element, the employee must prove "that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (citations omitted). Grant fails to sufficiently plead the third element in his SAC.

15

Grant fails to plausibly allege that protected activity under Title VII or the ADA was the but-for cause of his suspension or termination. While he generally notes that Delta suspended and terminated him after he filed a complaint with the EEOC and told Cummings and Olive Brown "he felt he was being discriminated against because he was African American," Grant more pointedly and specifically alleges that Linares's statement (about feeling unsafe and Grant making threats if he did not take his medication) was the real motivator behind Grant's suspension, calling it "a lie created to wrongfully retaliate[] against" him. *See* ECF No. 35-2 at ¶¶ 7.10, 7.17. Grant even states that Joseph told him his suspension had "nothing to do with" Grant's EEOC complaint and instead "was due to the false allegation from Jose Linares." *Id.* at ¶¶ 7.10, 7.13. Based on Grant's own allegations in the SAC, his protected activity was not the but-for cause of his suspension or termination. Accordingly, he fails to plausibly allege a *prima facie* case of retaliation under either Title VII or the ADA.

### G.  Grant fails to state a claim for race- or disability-based hostile work environment because he does not allege severe or pervasive conduct.

To the extent Grant alleges he was subjected to a hostile work environment based on his race or alleged disability, such a claim fails.[4] "To establish a claim of hostile work environment, a plaintiff must prove he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021). "To affect a term, condition, or privilege of employment, the harassment must be sufficiently

---

[4] As noted, because Grant fails to allege he was disabled within the meaning of the ADA, any disability-based harassment claim fails on its face. But as shown in this section, even if Grant did allege he was disabled under the ADA, he still fails to allege the necessary elements of a hostile work environment based on disability.

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West v. City of Houston, Tex.*, 960 F.3d 736, 741–42 (5th Cir. 2020). The Fifth Circuit's legal standard for workplace harassment is "high." *Castro v. Bexar Cnty.*, No. 5:23-CV-08-DAE, 2024 WL 3071571, at *5 (W.D. Tex. May 14, 2024). Demeaning or disrespectful behavior, unless extraordinarily offensive, cannot support a claim for hostile work environment. *See Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003–04 (5th Cir. 2022) (while conduct was undoubtedly "abrasive," allegations that supervisor repeatedly yelled at, chastised, mocked, and degraded plaintiff were not sufficiently severe to state a claim for hostile work environment); *Septimus v. Univ. of Houston*, 399 F.3d 601, 605 (5th Cir. 2005) (mocking and haranguing causing plaintiff to feel "useless and incompetent" not sufficiently severe to support a hostile work environment claim).

Grant claims that (i) he was "yell[ed] at," (ii) he was bullied and harassed after he allegedly reported he was assaulted, (iii) an employee asked him if he was "haze[d]" in the military, (iv) the break room contained a list of personnel who had not completed disability training, (v) he faced "toxic" and "abusive" behavior by employees, one of whom allegedly told him "he does not answer stupid a** questions," and (vi) an employee referred to him as a "bag." *See* ECF No. 35-2 at ¶¶ 1.3, 5.2, 5.6, 5.9, 5.12, 7.15. These allegations do not involve Grant's race or alleged disability, so they must be "excluded from the [hostile work environment] analysis."[5] *See Strauss v. Potter*, No. CIV.A. H-08-1895, 2011 WL 1463582, at *8 (S.D. Tex. Mar. 31, 2011) (holding that "instances of harassment that are not based on sex or race must be identified and excluded from the analysis" (citing *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 329 (5th Cir. 2008))).

---

[5] Grant attempts to connect his alleged disabilities to the hazing question by claiming that his alleged anxiety, PTSD, and MDD stemming from military service made him particularly sensitive to the question. Even if this were true, Grant does not allege that the employee asking the question even knew about these conditions. Thus, Grant fails to allege the question was based on his alleged disabilities.

Grant also claims that schedulers did not assign him to a team to give him "the façade of a lazy African American." *See* ECF No. 35-2 at ¶ 7.12. However, Grant wholly fails to allege that the schedulers took these actions *because of* Grant's race. *See* ECF No. 35-2 at ¶ 7.12. Instead, Grant makes the inferential leap that, because the schedulers did not assign him a team, their actions must have been motivated by race. Even if the schedulers' conduct were based on Grant's race, it does not reveal an environment that was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment," as required under applicable standards. *See Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023) (citations omitted); *Vallecillo v. U.S. Dept. of Housing & Urban Dev.*, 155 F. App'x 764, 767 (5th Cir. 2005) (supervisors referring to Hispanic plaintiff as "Che Guevara" and an "aggressive Hispanic" not sufficiently severe or pervasive to constitute a hostile work environment). Instead, this allegation reveals, at worst, disrespectful or demeaning behavior. In any event, Grant himself impugns the accuracy of this allegation in the very same paragraph of the SAC, contradictorily alleging that Delta gave him fewer breaks—and therefore *more* work—than other employees. *See* ECF No. 35-2 at ¶ 7.12.

Grant further alleges that Linares claimed to feel unsafe due to Grant's medications and falsely asserted that Grant would "hurt people and destroy equipment if he doesn't get his medication." *See id.* at ¶ 5.5. While this allegation alludes to a possible underlying medical condition, it still fails to state a claim: Grant alleges Linares harassed and bullied him not for being disabled, but instead because Linares allegedly felt unsafe due to Grant taking (or failing to take) medications. *See id.* at ¶ 5.5. Medication status (being on or not on medication), without more, is not a characteristic protected under the law.

Even if Linares's conduct was based on Grant's alleged underlying disabilities, the Fifth

Circuit has rejected harassment claims where the conduct alleged was more objectionable than that of Linares and where the plaintiff alleged much more detail than Grant has here. *See Equal Emp. Opportunity Comm'n v. U.S. Drug Mart, Inc.*, No. 23-50075, 2024 WL 64766, at *2 (5th Cir. Jan. 5, 2024) (where asthmatic employee requested to wear mask during COVID-19 pandemic and supervisor responded by repeatedly belittling him, even calling him "a disrespectful, stupid little kid," employee's harassment claims fell short of the Fifth Circuit's "fairly high standard for severe or pervasive conduct"); *Hollis v. Nat'l Univ.*, No. A-24-CV-481-RP, 2024 WL 4706361, at *3–4 (W.D. Tex. Oct. 11, 2024), *report and recommendation adopted*, No. 1:24-CV-481-RP, 2024 WL 4701912 (W.D. Tex. Nov. 5, 2024) (where *pro se* college professor claimed disabilities affecting his concentration and alleged that college unfairly assigned him near-impossible tasks, sent him "multiple emails a day about very common trivial matters," accused him "for things he had no role in," and demanded he write lengthy academic papers on extremely tight timelines, court held professor did not plausibly allege a hostile work environment because he failed to "describe the frequency of [the] harassing emails, whether the language used was threatening or humiliating, or whether responding to the emails and the . . . assignments interfered with his work performance"). As with the plaintiff in *Hollis*, Grant fails to describe whether Linares' allegedly false accusations were threatening or humiliating or whether they interfered with Grant's work performance.

On top of that, Grant's harassment allegations fail to suggest that Delta knew or should have known of the conduct and failed to take prompt, remedial action. *See Johnson*, 7 F.4th at 399–400. For this additional reason, Grant fails to state a claim for hostile work environment.

In sum, Grant fails to (i) connect the complained-of behavior to his race or disability, (ii) show it was sufficiently severe or pervasive, (iii) include sufficient detail of the allegedly offensive behavior, and (iv) show that Delta knew about the alleged conduct and did not appropriately act to

19

remedy it. Grant thus fails to plausibly allege that he suffered harassment affecting a term, condition, or privilege of his employment. *See West*, 960 F.3d at, 741–42. Accordingly, Grant fails to state a claim for harassment based on his race or alleged disability.

**H.    The Court should dismiss all of Grant's claims with prejudice.**

Finally, the Court should dismiss all claims in the SAC *with prejudice*. In total, the SAC is the *seventh* complaint filed in this action. *See* ECF Nos. 1, 7, 8, 14, 20, 26, 35-2. The Court's April 21, 2025, Order plainly stated it would allow Grant "one final opportunity to replead with specificity the claims discussed" in the Order. *See* ECF No. 28 at 11. Grant failed to do so.

A party may not repeatedly file futile amendments after failing to state a claim. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (district court properly dismissed case with prejudice without granting leave to amend where plaintiff, on notice of possible pleading deficiencies, failed to correct them); *see Robbins v. XTO Energy, Inc.*, No. 3:16-CV-0793-S, 2018 WL 58449967, at *5 (N.D. Tex. Nov. 7, 2018) (dismissing claims with prejudice where plaintiff repeatedly failed to cure pleading deficiencies).

Delta's first Motion to Dismiss offered Grant his first opportunity to correct his pleading deficiencies. *See* ECF No. 5. Delta's Partial Motion to Dismiss offered Grant his next opportunity. *See* ECF No. 12. Now, after substantively adopting the arguments in Delta's Partial Motion to Dismiss, this Court has offered Grant a "final opportunity." *See* ECF No. 28 at 11. Because Grant was fully on notice of his pleading deficiencies before filing his SAC, the Court should dismiss his claims with prejudice. *See Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982) (affirming denial of leave to amend where plaintiffs had already amended their complaint and offered no justification for the failure to clearly delineate necessary facts).

**IV.  CONCLUSION**

For the foregoing reasons, Grant's claims are without merit. Because Grant has failed his

"final opportunity" to state a claim in accordance with federal pleading standards, Delta respectfully requests that this Court dismiss Grant's Second Amended Complaint (ECF No. 35-2) with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 20, 2025                          Respectfully submitted,

                                            /s/ Celeste R. Yeager
                                            Celeste R. Yeager
                                            Texas State Bar No. 00797715
                                            cyeager@littler.com
                                            Josh K. Ordiway
                                            Texas State Bar No. 24126538
                                            jordiway@littler.com

                                            LITTLER MENDELSON, P.C.
                                            2001 Ross Avenue, Suite 1500
                                            Dallas, TX 75201
                                            Telephone:       214.880.8100
                                            Facsimile:       214.880.0181

                                            **ATTORNEYS FOR DEFENDANT DELTA
                                            AIR LINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, and electronically served same using the Case Management/Electronic Case Filing (CM/ECF) system of the Court. I further certify that a true and correct copy of the foregoing was served upon *pro se* Plaintiff Kentrez Grant via e-mail at kentrez_78@yahoo.com and USPS at

4516 Burleson Road, #17848
Austin, Texas 78744

                                            /s/ Josh Ordiway
                                            Josh Ordiway