IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **KENTREZ GRANT** § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **DELTA AIR LINES, INC.** § <br> § <br> **Defendant.** § <br> § | **CIVIL ACTION NO. 1:25-cv-00154-ADA** |

### PLAINTIFF'S RESPONSE IN OPPOSITION Re- DEFENDANT'S THIRD MOTION to DISMISS

In OPPOSITION to Defendant's (Delta Air Lines, Inc. or Delta) Third Motion to Dismiss (ECF No. 37) filed on **May 20, 2025**, Plaintiff (Kentrez Grant or Mr. Grant) files this response under Federal Rules of Civil Procedure (Fed. R. Civ. P.) Rule 12 and Local Rule CV-7(d). The Second Amended Complaint was filed under Fed. R. Civ. P. Rule 15. This response is filed to preserve the rights to relief annotated within the Plaintiff's Second Amended Complaint of employment discrimination endured under Delta Air Lines, Inc and provides reasons to DENY the Defendant's Third Motion to Dismiss and to Compel the filing of delinquent/vague Initial Disclosures that were due April 10, 2025.

### I. PROCEDURAL HISTORY

Mr. Grant filed his original "Complaint" on January 31, 2025. *See* ECF No. 1. Delta filed its first Motion to Dismiss under Rule 12(b)(6) (ECF No. 5) on February 24, 2025. The Plaintiff requested two complaints be removed to ensure transparency of the case. The complaints were erroneously On March 6, 2025, Mr. Grant filed an Unopposed Amended Complaint which Delta knew was the operative complaint because the docket depicted when the Court added the Complaint with the annotation "filed by cc3" in the docket. The Plaintiff was given a conference

1

about the case transfer and discovered the "filed by" statement. I doubt Delta and is unaware of the fact it states who filed the document. This is another attempt by Delta to confuse the Court with false perceptions of facts about the case. The Court, on numerous occasions, addressed Delta of the filing being proposed. Delta then filed a Partial Motion to Dismiss, on March 20, 2025, seeking to dismiss the inclusion of Section 1981 and a disparate impact. See ECF Nos. 10-2 and ECF No. 12. On April 21, 2025, the Court granted Delta's Motion to Strike as to the Fourth Amended Complaint but not to the pleading. The attorneys for the opposing party deliberately stated false facts continuously on Court documents to cause an injury to the Plaintiff. The opposing party continuously insinuated that ECF No. 10-2 and ECF No. 30 were both filed by the Plaintiff and that is a deliberate false statement of facts. This action, as others by Delta, appears to be Fraudulent Misrepresentation. The Court also *sua sponte* struck Grant's Fifth Amended Complaint (leaving the Unopposed Amended Complaint as the remaining operative complaint). See Id. at 4. On the same day, the Court denied Delta's Partial Motion to Dismiss stating the Court had not seen the Complaint. Delta fails to show Grant has already pleaded his best case. This is the Court's first opportunity to assess his claims and apprise him of their insufficiency." See ECF No. 28 at 11. The Court's Order awkwardly adopted almost all of Delta's arguments verbatim. The Court allowed Mr. Grant "one final opportunity to replead with specificity to **ONLY** the claims discussed" in the Order. Id. The Court thus ordered Mr.Grant to file one more amended complaint within fourteen days, which would supersede the operative complaint. Id. Mr. Grant filed his "Second Amended Complaint" on May 5, 2025. See ECF No. 34. Mr. Grant noticed an issue that has NEVER happened with his filings. An electronic data error caused only part of the Amended Complaint to upload. Mr. Grant immediately tried to contact the opposing party and the court deputy via email See ECF No. It was not noticed until Mr. Grant electronically served the altered filed document via email to Delta. Then Mr. Grant filed a Notice to ensure the Court had the correct version of the Second Amended Complaint. See ECF No. 35-2. Mr. Grant emailed the Court deputy and the opposing party on the issue. See ECF No. 35-1. The Plaintiff never had any problems uploading documents. This seemed very

2

coincidental as with the manual filing for case transfer with the electronic filing without the sequential computerized URL (mean manual added although electronically filed). The Defendant failed to properly conduct the Rule 26 (f) Conference by not properly allowing the Plaintiff to go over the issues and address the initial disclosures. There have been a lot of coincidences and timing of documents to include the format of the opposing party's motions compared to the Third Motion to Dismiss. It would insinuate knowledge of proceedings before the proceedings take place. Mr. Grant filed a Motion for Clarification (ECF No. 36) to validate issues with case party titles on ECF No. 28, the case number on ECF No. 30, and any further requirements of the Court to publish the Scheduling Order. The 120-day mark for the actual Scheduling Order to be created by the Court is **June 3, 2025**. The Plaintiff realized he has made disclosures and Delta has not made any disclosures pertaining to Mr. Grant's employment. The Plaintiff filed a Motion to Compel on May 30, 2025, Delta filed an Opposed Motion to Stay Discovery. The continuous blatant acts of delaying discovery including **not properly** disclosing Initial disclosures by **April 10, 2025**, the reassignment of the case process where it was electronically filed but had to be physically entered at a later date, and the fact that the format of Delta's Third Motion to Dismiss is as though the Defendant has information that was not privy to both parties. Delta has failed to properly disclose initial disclosures which have caused an irrevocable preponderance of injury to Mr. Grant's opportunity to properly plead his case.

## I. STATEMENT of REASON for OPPOSITION & AUTHORITIES
### A.  Federal Rules of Civil Procedure (Fed. R.Civ.P.) Rule 12
### Local Rule CV-7(d)

Mr. Grant does possess a **Viable Claim** with Article III standing, the plaintiff: "(1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." Speech First, Inc. v. Fenves, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020) (citing Lujan v. Def's. of Wildlife, 504 U.S. 555, 560–61 (1992)   *Dukes v. NewRez LLC*, 1:22-CV-413-RP (W.D. Tex. Jun. 30, 2023).

3

There would not be a COMPLAINT had NOT Mr. Grant been abused, harassed, racially discriminated against, and terminated out of retaliation for addressing issues with leadership and the Equal Employment Opportunity Commission (EEOC). Mr. Grant was, INDEED, terminated to be replaced in the seniority list of employees and possibly his new position at the time of termination by someone not in any of his protected classes after protected communications of abuse, harassment, and discrimination. Mr. Grant work performance was not properly monitored by not placing him on actual teams to be able to discriminate and harass Mr. Grant. The Defendant has failed to disclose initial disclosures as stated in the guidelines of Fed. R. Civ P. Rule 37. Mr. Grant received less breaks and was treated less favorably than all the other new employees in his group and Mr. Grant was the only African American/Black male hired in his group. Mr. Grant is also the only new hire to report violations of discrimination to his knowledge as well.

A claim is valid if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The condonement and lack of action from Delta Air Lines, Inc. Executive Officers down to Operations Service Managers after multiple attempts from the Plaintiff, at the very least, proves gross negligence which led to the discriminatory acts and harassment of Mr. Grant.

The factual allegations in a complaint must be sufficient to raise a right to relief above the speculative level, even accepting the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555–56. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The mere timeline of the actions combined with direct evidence proves at the very least some form of retaliation and harassment had taken place in a work environment.

## II. FACTUAL BACKGROUND

4

Mr. Grant is an African-American man with various medical ailments who worked as a Ramp Agent for Delta from June 17, 2024, until his termination on September 27, 2024. Id. at ¶¶ 5.1, 5.2, 7.4, 7.5. Mr. Grant stated facts of discriminatory workplace experiences. Mr. Grant was bullied and harassed. Mr. Grant reported to Janet Montey of being hit with a trash can by a white employee who said to call him "T-Bone" and "wrongfully called Mr. Grant, "Jackson" T Bone stated he was from Gary, Indiana (Birthplace of Michael Jackson). Mr. Grant wrongfully failed driver's training in an attempt to make him work in the bag room. None of the employees wanted to work in that location and that location got the least breaks. Delta employees were allowed to deliberately fail Mr. Grant for certain training. *Id*. at ¶¶ 5.2, 5.3. Jose Linares said he felt unsafe because Grant was on medication and falsely stated that Grant "said he would hurt people and destroy equipment if he doesn't get his medication." Id. at ¶ 5.5. Mr. Grant had informed Brandon Cummings of the without reason and became concerned with the false allegation, despite saying Mr. Grant was a "stellar" employee. Id. Mr. Grant was asked if he was "haze[d]" in the military by Olive Brown a Delta Field Director. On August 16, 2024, David Mann (Janet Montiy's son) an ALA and Scheduler told Mr. Grant, "I don't answer stupid a** questions." *Id*. ¶¶ 5.5, 5.6, 5.12. Mind you the questions are the very issue at hand. Not having Mr. Grant on a team was a way to hide the abuse and later make false accusations of Mr. Grant's work ethic. Without accurately placing the Plaintiff on a team, Mr. Grant could falsely be accused of damage caused by another employee. This would further support the reason Delta should be compelled to disclose the initial disclosures. David Jiminez an ALA that was in charge of training Mr. Grant referred to the Plaintiff as a "bag." every day they worked together *Id*. at ¶ 7.15. Mr. Grant was escorted by Christopher Joseph to the employee handicap parking lot to embarrass him. Id. at ¶ 5.12.  The Plaintiff informed the Court of his actual supervisor being Brandon Cummings until August 15, 2024. Christopher Joseph was wrongly labeled as Mr. Grant supervisor about the July 28, 2024. *Id*. at ¶ 5.9 Mr. Grant only worked maybe a full day with Christorpher Joseph who was on the Night Shift. Mr. Grant only worked the day shift while employed with Delta Air

5

Lines, Inc. The fact so many direct statements are being altered by Delta to allude to false information is confusing and elusive. Grant further alleges that he complained about his work experience.

Mr. Grant filed an Inquiry Complaint with the EEOC on July 27, 2024 of which Brandon Cummings, Christopher Joseph, Olive Brown, and other C Suite Officers were Aware.  Mr. Grant filed a Charge of Discrimination with the EEOC after his termination on November 1, 2024. Id. At ¶¶ 1.2, 3.1, 5.4, 5.5, 6.2. Mr. Grant informed Jose Linares (ALA) (before the slanderous remarks) by Mr. Linares, Olive Brown (CSA Regional Field Director), and Brandon Cummings (OSM) "bid" system Delta apparently used. *Id.* At ¶ 5.4. Mr. Grant made the EEOC investigators aware that (Christopher Joseph OSM that terminated Mr. Grant's employment) leaders did not complete disability training. *Id.* At ¶¶ 5.8, 5.9. Mr. Grant informed Brandon Cummings, Olive Brown, and the EEOC of "harassment from employees" and emailed a handful of Directors and C-Suite officers about "discriminatory and harassment issues" at Delta. Id. At ¶¶ 5.4, 5.13. The C-Suite Officer that stood out the most was Molly Harris Managing Director of ACS. Ms. Harris gave numerous false hopes of addressing the Mr. Grant's concerns for the abuse, discrimination, and retaliation experienced at Delta. *See* ECF No. 19-11 Contacting the C-Suite Officers directly did not prompt any formidable response or inquiry of facts. *See* ECF No. 19-21. This in itself is evidence of gross negligence.

Mr. Grant also sought accommodations to be on the day shift to go to Department of the VA medical appointments and get established for care. See ECF No. 19-8, ECF No. 19-9, and ECF No. 19-17. The Plaintiffs actual supervisor was Brandon Cummings. Mr. Cummings was well aware and knew of the "Shift Bid" as well as Mr. Grant's filed complaint with EEOC. Mr. Grant provided the email correspondence as created and received with Delta Air Lines Accommodations Board requested accommodations via the method emailed by Ms. Brown" on August 10, 2024, and that the request was denied the next day. Id. At ¶¶ 5.8, 5.9. Delta denied the request on August 11, 2024. The Plaintiff filed another Accommodations Request with the information about establishing a provider and was denied again on August 12, 2024, despite of

Mr. Grant explaining "the process of getting a provider to sign off on documents." Id. At ¶ 5.10. Mr. Grant unwillingly accepted a bid that would allow him to attend medical appointments. Id. At ¶ 5.11. The bid was for the job William Mann does the same employee that was disrespectful, wrongfully putting the Plaintiff on Lunch everyday and not properly assigning task. This was the norm for all of the Schedulers except a darker complexioned Scheduler and ALA named Ronald Kennedy (Assuming the proper name). Mr. Kennedy was shortly terminated before Mr. Grant.

Mr. Grant was terminated Delta placed him on unpaid suspension on August 16, 2024, and terminated his employment on September 27, 2024. Id. At ¶¶ 5.12, 5.14, 7.15.

## II. ARGUMENTS & AUTHORITIES

### A. Convincing Mosaic

The Eleventh Circuit, have cautioned that *McDonnell Douglas* is "only one method by which [a] plaintiff can prove discrimination by circumstantial evidence." *Tynes v. Florida Department of Juvenile Justice*, Case No. 21-13245 (11th Cir. Dec. 12, 2023). A plaintiff can also overcome summary judgment by presenting a convincing mosaic of circumstantial evidence that would allow a factfinder to infer intentional discrimination by the decisionmaker. The EEOC did not have the time and resources with their backlog to properly investigate and issued a Notice of Rights to Sue Letter on November 14, 2024. That was only 13 days after the Charge of Discrimination was filed. Due to the Defendant violating Fed. R. Civ. P. Rule 37 by not properly making any initial disclosures and continuously avoiding disclosures to ensure the Plaintiff has the least amount of direct evidence as possible.

### B. Mr. Grant states a claim for race-based disparate treatment because he stated how Delta took adverse employment actions against him based on his race.

Mr. Grant filed his Complaint in pursuant of Fed. R. Civ. P. Rule

1. <u>Grant fails to state a claim for disparate treatment under Title VII because</u>

"To establish a *prima facie* claim for race discrimination under Title VII, a plaintiff must show 'that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Story v. Gibson on behalf of Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018))." Mr. Grant was treated worst than the new employees and not given given the treatment to reflect his work performance.

2. <u>Mr. Grant connected his race to his suspension and termination.</u>
The only reason Mr. Grant was terminated was due to the facts of being black his work performance was irrelavent. Mr. Grant also was the only Black American born citizen that was hired in his group that started on **June 17, 2024**.Mr. Grant didn't identify race and other identifiable information due to the lack of necessity. There is a huge disparity of American born Black male employees that live in the area working for the Defendant. Mr. Grant was the most senior new employee in his group and possessed the most aviation experience. The employer was well aware on May 23, 2024 of    Mr. Grant's aviation background and desire to become an Aircraft Support Mechanic within six months of employment.

2. <u>Mr. Grant states a claim for hostile work environment under Title VII because   he alleges severe or pervasive conduct.</u>

Second, Mr. Grant vast knowledge of aviation and constant belittlement by senior Ramp Agents was demeaning. The Plaintiff had an issue almost every day at work for the Defendant because of a fellow employee. Mr. Grant regardless of his efforts was not treated as well as other employees in his group. The incident when his belongings were wrongfully removed out of the chair and Mr. Grant was told to eat outside on the ground was a laughing point with Janet Montiy and other senior Ramp Agents. One of the agents laughed and said, "Did he go and put in a

complaint against me yet." While circling and laughing with Janet Montiy (AW-OSM). That's pretty humiliating and seems like it meets the standards for unwanted harassment as required under applicable standards. The fact, Mr. Grant was replaced in seniority listing by someone possibly less qualified and not in his protected class meets requirements.

      3. <u>Mr. Grant states a claim for retaliation under Title VII and ADA because he does allege, he engaged in protected activity.</u>

Third, Mr. Grant in his Proposed Amended Claim, states a claim for retaliation and it is also listed on the Original Civil Cover Sheet. A *prima facie* retaliation claim under Title VII requires that a plaintiff show that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Johnson*, 7 F.4th at 407–08 (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). Protected activity consists of either: (1) opposing "any practice made an unlawful employment practice" by Title VII; or (2) by "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." *E.E.O.C. v. Rite Way Serv., Inc*., 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a)). Mr. Grant made a complaint with the EEOC after only working within the Defendant's organization for a month. A retired service member with over 20 years of honorable service and two combat tours. Went through training at the United States Marine Corps Recruit Training Depot at Parris Island, Beaufort South Carolina. Suffered the ultimate military psychological training for personnel entering the military service but did not last more than a month before filing a complaint against the defendant for discrimination and harassment. Mr. Grant is 46 years of age and knows when he's being discriminated against. Mr. Grant, unlike Christopher (CJ) Joseph (BW OSM) of Delta Air Lines, Inc. did the mandatory training on Discrimination and Disability without going beyond a deadline.

On **August 8, 2024**, the Plaintiff addressed racial discrimination issues with Brandon Cummings (Mr. Grant's supervisor) and Olive Brown (Field Director, South Region). Mr. Grant informed them of his needs for accommodations, the EEOC Complaint, and the issues with Jose

9

Linares. Mr. Grant spoke with Ms. Brown at great length over his medication and the issues with employees. During that meeting Mr. Grant was informed he had no negative infractions and they will look into accommodations. At this time Ms. Brown asks Mr. Grant, "Mr. Grant did they haze in the military?" The plaintiff was at a loss for words and stated, "yes." Being hazed in the United States military and comparing that to working as a civilian at an airport is disrespectful and insulting to any man or woman that ever swore to protect this nation. However, it does prove the lack of professionalism and understanding of unethical business practices.

### C. Grant fails to state a claim for disability discrimination because he does not allege he is disabled within the meaning of the ADA.

Mr. Grant medically retired from the US Army with over 20 years of honorable service in the aviation community. "To allege a *prima facie* case of disability discrimination based on disparate treatment, a plaintiff must demonstrate: (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment action on account of his disability. *Mueck*, 75 F.4th at 483 (quoting *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020)). The Plaintiff went to college utilizing Veteran Affairs Vocational Rehabilitation Program Chapter 31. Mr. Grant, the plaintiff was given a document called a Schedule A- listing Memo. This memo is warranted under Schedule A hiring authority 5 CFR 213.3102 (u) for personnel seeking legal employment that suffer from a documented disability.

To establish a *prima facie* case of disability-based harassment, Mr. Grant: "(1) informed the Defendant on his application and numerous times while employed; (2) Complaints made to leadership and filed with the EEOC proves issues were brought to the attention of those in a protected communication; (3) numerous employees were upset my disabilities would have priority over their seniority for bids and used my medication use to say they felt unsafe; (4) Mr. Grant was terminated about a week after the protected communication with Olive Brown and Brandon Cummings. On **August 16, 2024**, Mr. Grant informed Christopher Joseph the act of putting him on Suspension without pay over an alleged allegation seemed like retaliation for his EEOC complaint and accommodations for his work shift and position accommodation and (5)

10

Mr. Grant sent emails and have other digital evidence of the gross negligence of leaders within Delta Air Lines, Inc. concerning issues on this case matter from: Glen. W. Hauenstein, President of Delta Air Lines, Inc. to Brandon Cummings and Christopher Joseph (BW OSMs).

> **D. Mr. Grant Does Have a qualifying disability; he does allege the necessary elements of disability discrimination.**

Mr. Grant Second Amended Complaint addresses the issues of his disability and the treatment suffered during his employment. These filings are getting difficult. The Plaintiff is constantly forced to repeat facts of issues that have been addressed because the Defendant wants to avoid discovery. To the extent to not properly disclose information that it mandated by federal laws.

**H. The Court should not dismiss all of Grant's claims with prejudice.**

The Court should not dismiss all of Mr. Grant's claims with prejudice. Mr. Grant has been cooperative and transparent throughout this litigation process. The convincing mosaic test has not been applied to Mr. Grant's Complaints. *Tynes v. Florida Department of Juvenile Justice*, No. 21-13245 (11th Cir. Dec. 12, 2023), the Eleventh Circuit confirmed that *McDonnell Douglas* is not the be-all and end-all for Title VII cases and that the decades-long evidentiary framework is not a set of elements a plaintiff must prove to survive summary judgment or prevail at trial. Rather, "the ultimate question in [a Title VII] discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination,". As a Pro Se litigant, that is a disabled veteran, that has gone to combat, suffers from documented behavioral health and physical conditions stated throughout the case. Delta has responded and handled the issues of this case as they handled Mr. Grant as an employee. Delta has handled the case with gross negligence and complete disregard to the welfare of Mr. Grant. Delta has violated Fed. R. Civ. P Rule 37. No regard for the impact of this case on Mr. Grant's family or anyone else that has ailments and seek to be productive instead of committing suicide. I OBJECT to the terminology of SAC to reference the Second Amended Complaint. It appears to mock the fact that there is no evidence or disclosures because the fact Delta is not being

cooperative and providing the initial disclosures to Mr. Grant. Delta has constantly avoided any form of discovery to include initial disclosures.

**NOTICE**: The Plaintiff offers Apologies to the Court but due to the sleep deprivation and stress endured the Plaintiff has done what he can on this matter for the current moment. The Plaintiff does not CONCEDE to any of the unanswered redundant allegations of the Defendant's Motion to Dismiss. Due to current health condition Plaintiff is filing this document.

### IV. CONCLUSION

For the foregoing reasons, the Defendant's Third Motion to Dismiss should be DENIED in its entirety. Delta has violated Fed. R. Civ. P Rule 37 in multiple ways in an attempt to not have to procure or be found liable for destroying evidence. By failing to provide the Initial Disclosures, Delta has deliberately ensured there is no transparency in case matters directly causing further emotional, financial, physical, and psychological damages to the Plaintiff. Mr. Grant asks the Court to allow the addition of Section 1981 to his Complaint to compensate for the lack of a convincing mosaic argument with a "but for "argument combining all racial discrimination claims. The addition of a disparate impact will help ensure the safety of personnel and mitigate behavioral health issues that could arise due to a lack of proper time to seek accommodation.

Dated: **June 3, 2025**                                                                 Respectfully Submitted,

    /s/*KENTREZ GRANT*
Kentrez Grant
(Pro Se)
4516 Burleson Rd.
#17848 Austin, TX 78744
Telephone:(254) 458-9661
Kentrez_78@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **June 3, 2025**, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, and electronically served same using the Case Management/Electronic Case Filing (CM/ECF) system of the Court. I further certify that a true and correct copy of the foregoing was served upon ATTORNEYS FOR DEFENDANT, DELTA AIR LINES, INC.:

Celeste R. Yeager at email cyeager@littler.com and Josh K. Ordiway at jordiway@littler.com and mailed via USPS at:

LITTLER MENDELSON, P.C.

2001 Ross Avenue, Suite 1500

Dallas, TX 75201

   /s/ KENTREZ GRANT
Kentrez Grant
(Pro Se)
4516 Burleson Rd.
#17848 Austin, TX 78744
Telephone:(254)458-9661
kentrez_78@yahoo.com